# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 25, 2015      Decided December 18, 2015

No. 14-1168

FLYTENOW, INC.,
PETITIONER

v.

FEDERAL AVIATION ADMINISTRATION, ADMINISTRATOR,
RESPONDENT

---

On Petition for Review of an Order
of the Federal Aviation Administration

---

*Jonathan Riches* argued the cause for petitioner. With him on the briefs were *Gregory S. Winton*, *Clint Bolick*, and *Aditya Dynar*.

*Sydney A. Foster*, Attorney, U.S. Department of Justice, argued the cause for respondent. With her on the brief were *Benjamin C. Mizer*, Acting Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney at the time the brief was filed, and *Mark R. Freeman*, Attorney.

Before: PILLARD and WILKINS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, *Circuit Judge*: Flytenow, Inc., developed a web-based service through which private pilots can offer their planned itineraries to passengers willing to share the pilots' expenses. After starting operations in early 2014, Flytenow sought a legal interpretation from the Federal Aviation Administration (FAA) regarding its business plan's compliance with the Federal Aviation Act of 1958 and the FAA's regulations. The FAA responded with a Letter Interpretation, concluding that pilots offering flight-sharing services on Flytenow's website would be operating as "common carriers," which would require them to have commercial pilot licenses. Flytenow's members, licensed only as private pilots, thus would violate FAA regulations if they offered their services via Flytenow.com.

Flytenow asks us to set aside the FAA's Interpretation as arbitrary and capricious and inconsistent with statutory and constitutional law. Because we conclude that the FAA's Interpretation is consistent with the relevant statutory and regulatory provisions and does not violate Flytenow's constitutional rights, we deny Flytenow's petition for review.

I.

Flytenow.com facilitates connections between pilots and "general aviation enthusiasts" who pay a share of the flight's expenses in exchange for passage on a route predetermined by the pilot. Enthusiasts must be members of Flytenow to search for flights, but anyone may become a member by filling out an online form. Pilots using Flytenow's service "initially and unilaterally dictate the time, date, and points of operation" of their proposed flights. J.A. 48. After a member-enthusiast expresses interest in being a passenger on a particular flight, a pilot may "accept or reject an enthusiast's request . . . for any or no reason." *Id.* If a pilot carries one or more passengers,

Flytenow facilitates the sharing of expenses on a pro rata basis between passengers and pilot. *Id.* Around the same time that Flytenow publicly launched its flight-sharing website and requested the FAA's legal opinion, another firm proposing a substantially similar service, AirPooler, Inc., submitted a parallel request for a legal interpretation on the same issue.

The FAA is charged with "promot[ing] safe flight of civil aircraft." 49 U.S.C. § 44701. To that end, the FAA is empowered to regulate nearly every aspect of private and commercial flight, including licensing and regulation of pilots and their operations. *See, e.g.*, *id.* §§ 44701(a), 44703, 44705. At issue here is whether the FAA permissibly concluded that private pilots using Flytenow's service to offer flights to potential passengers hold themselves out as common carriers transporting persons from place to place for compensation in violation of the terms of their noncommercial licensure.

The FAA issues several categories of "airman certificates" licensing qualified pilots to fly in various capacities subject to specified terms. *See id.* §§ 44702, 44703; 14 C.F.R. §§ 61.81-95, 61.102-17, 61.121-33. Relevant to this petition are "commercial pilot" licenses, *id.* Part 61, subpart F, and "private pilot" licenses, *id.* subpart E. Certified commercial pilots are qualified to transport passengers or property for compensation. *See id.* § 61.133(a)(1). Private pilots, by contrast, are barred from receiving compensation. *See id.* § 61.113(a).

Seven narrow, enumerated exceptions to the compensation bar permit private pilots to receive compensation in specified circumstances. *Id.* § 61.113(b)-(h). Those exceptions authorize, for example, private pilots to accept compensation for certain charity events, *id.*

§ 61.113(d), search-and-location operations, *id.* § 61.113(e), or airplane-sale-related flights, *id.* § 61.113(f). One of the seven exceptions to the compensation bar provides that a private pilot may share expenses with passengers, provided that the pilot does "not pay less than the pro rata share of the operating expenses" and that the expenses "involve only fuel, oil, airport expenditures, or rental fees." *Id.* § 61.113(c). The pro rata sharing of expenses is further limited by the FAA's "common-purpose test," which requires private pilots and their expense-sharing passengers to share a "bona fide common purpose" for their travel. *See* FAA Legal Interpretation Letter from Rebecca B. MacPherson, Assistant Chief Counsel for Regulations, to Mark Haberkorn (Oct. 3, 2011) (Haberkorn Interpretation), J.A. 41-44. Private pilots' receipt of compensation outside of the seven exceptions is a violation of section 61.113 subject to civil penalties under 49 U.S.C. § 46301.

In addition to pilot licensing, the FAA regulates the conduct of aircraft and pilots in flight. The regulations make an important distinction between private carriage and common carriage, with the latter subject to more stringent operating requirements.

Part 91 of the FAA's regulations establishes baselines that apply to all aircraft operating in the United States. *See* 14 C.F.R. § 91.101; *see generally id.* §§ 91.101-47. Part 91 governs, for example, the use of seat belts, *id.* § 91.107, minimum safe altitudes, *id.* § 91.119, aircraft speed, *id.* § 91.117, and rights of way among aircraft, *id.* § 91.113.

Part 119 of the FAA's regulations subjects flights operating as air carriers to safety requirements beyond what Part 91 requires of all flights. *See* 14 C.F.R. § 119.1. An "air carrier" under the Federal Aviation Act is a person

undertaking to provide "air transportation," 49 U.S.C. § 40102(a)(2), defined to include "foreign air transportation, interstate air transportation, or the transportation of mail by aircraft," *id.* § 40102(a)(5). Interstate air transportation, the category relevant to this case, "means the transportation of passengers or property by aircraft as a common carrier for compensation . . . ." *Id.* § 40102(a)(25). Anyone piloting as an air carrier must have "an air carrier operating certificate" and operate only in compliance with its terms. 49 U.S.C. § 44711(a)(4). The term "[a]ir carrier" for purposes of Part 119 of the regulations tracks the statutory definition. *See* 14 C.F.R. § 1.1. Thus, as relevant here, under the statutory and regulatory definitions, an "air carrier" is a person engaged in transportation of passengers as a "common carrier."

The statute does not define "common carrier" or "compensation." *See* 49 U.S.C. § 40102(a). Instead, the FAA has relied for nearly thirty years on a definition of common carriage it announced in an advisory circular. FAA Advisory Circular 120-12A (April 26, 1986) (FAA Advisory Circular), J.A. 30-32. That circular noted the common-law heritage of "common carriage" and "private carriage" and determined that, because the Act left those terms undefined, FAA "guidelines giving general explanations" of the terms "would be helpful." *Id.* ¶ 3, J.A. 30.

The FAA Advisory Circular distinguished "private carriage" from "common carriage." It explained that "[p]rivate carriage for hire is carriage for one or several selected customers, generally on a long-term basis." *Id.* ¶ 4.d., J.A. 31. As long as she does not hold herself out to the public generally, and any compensation she receives does not exceed the passenger's pro rata share of expenses, a private pilot may offer private carriage consistently with the regulations. *See generally* FAA Advisory Circular, J.A. 30-

31. In contrast to private carriage, the FAA's Advisory Circular defined "common carriage" as service meeting four elements: "(1) a holding out of a willingness to (2) transport persons or property (3) from place to place (4) for compensation." *Id.* ¶ 4, J.A. 30. The two "common carriage" definitional factors at issue here are the first and fourth—holding oneself out as willing to transport passengers, and doing or offering to do so for compensation.

As noted above, a pilot with a commercial license is qualified to offer carriage for compensation; a private pilot may only receive compensation pursuant to one of the seven exceptions in section 61.113. 14 C.F.R. § 61.113. Under the FAA Advisory Circular, a pilot's receipt of compensation may be evidence that a pilot's operations are "air transportation," meaning common carriage, requiring a higher level of pilot qualification. FAA Advisory Circular, J.A. 31. For example, notwithstanding the regulatory permission for private pilots to carry selected customers and share flight costs with them pursuant to the express exception set forth in section 61.113(c), even carriers flying members of only "one organization may be . . . common carrier[s] if membership in the organization and participation in the flights are, in effect, open to a significant segment of the public." *Id.* ¶ 4.f., J.A. 31. The FAA also noted that a private pilot's provision of "free transportation" for a hotel or casino that requested "nominal charges" for "gifts and gratuities" has been held to be "common carriage based on the fact that the passengers [we]re drawn from the general public and the nominal charge constituted compensation." *Id.* ¶ 4.g., J.A. 31.

The FAA Advisory Circular defined "holding out" as making representations "to the public, or to a segment of the public" that a carrier is "willing to furnish transportation within the limits of its facilities to any person who wants it."

*Id.* The FAA warned that a private pilot may intend to offer only private carriage, but the pilot's flights could come to be treated as common carriage: "The number of contracts must not be too great, otherwise it implies a willingness to make a contract with anybody." *Id.* ¶ 4.d., J.A. 31. The FAA emphasized that its definition of "holding out" as a factor in the definition of common carriage is broad and flexible: "'holding out' which makes a person a common carrier can be done in many ways and it does not matter how it is done." *Id.* ¶ 4, J.A. 30. If a carrier were to show that it did not have rate schedules, that it offered services only pursuant to separately negotiated contracts, or that the carrier occasionally refused service to would-be customers, such facts would not necessarily be "conclusive proof" that a carrier is a private— as opposed to common—carrier. *Id.* ¶ 4, J.A. 30. A carrier cannot avoid a "holding out" determination and its regulatory implications simply by avoiding advertising on its own behalf; "'holding out' may be accomplished through the actions of agents, agencies, or salesmen who may, themselves, procure passenger traffic from the general public . . . ." *Id.* ¶ 4.b., J.A. 31.

The FAA responded to Air Pooler's and Flytenow's requests for legal interpretations in separate letters on August 13 and August 14, respectively. The letter to Flytenow incorporated by reference the letter to AirPooler. The letters concluded that pilots offering services on Flytenow.com or AirPooler.com would be engaged in common carriage as the FAA defines it, which would subject them to Part 119, the more stringent regulations governing pilots in air commerce.

First, in its letter to AirPooler, the FAA explained the general rule that a private pilot may not act as pilot-in-command of an aircraft carrying passengers or property for compensation or hire. That general rule admits of a narrow

exception for private pilots' "accept[ance] [of] compensation in the form of a pro rata share of operating expenses" from their passengers. J.A. 58. That expense-sharing provision is cast as "an exception to the compensation or hire prohibition," that is, it specifies a circumstance in which compensation is permitted. *Id.*

Second, the FAA explained that it treats flight-sharing services as "common carriage." Under the FAA's definition of "common carriage," flight-sharing services meet the compensation element of the common-carriage definition because expense sharing *is* compensation. J.A. 59. The "holding out" element is met by pilots' use of the online service to "post[] specific flights" to the website. J.A. 60. In its letter to Flytenow, the FAA explained that "[h]olding out can be accomplished by any 'means which communicates to the public that a transportation service is indiscriminately available' to the members of that segment of the public it is designed to attract." J.A. 62 (quoting *Transocean Airlines*, 11 C.A.B. 350 (1950) (enforcement proceeding)). The FAA concluded that, "[b]ased on [Flytenow's] description, the website is designed to attract a broad segment of the public interested in transportation by air." J.A. 62. The FAA thus concluded that a pilot holding out his services and receiving expense-sharing compensation is engaged in "common carriage" and requires a Part 119 certificate.

Flytenow timely filed this petition for review challenging the FAA's Interpretation.

## II.

We have jurisdiction to review Flytenow's petition under section 46110 of the Federal Aviation Act, whether or not the FAA's interpretation is a final order. Even where no party contests jurisdiction, "it is well established that a court of

appeals must first satisfy itself of its own jurisdiction, *sua sponte* if necessary, before proceeding to the merits." *Blackman v. District of Columbia*, 456 F.3d 167, 174 (D.C. Cir. 2006) (quoting *Citizens for Abatement of Aircraft Noise, Inc. v. Metro. Wash. Airports Auth.*, 917 F.2d 48, 53 (D.C. Cir. 1990), *aff'd*, 501 U.S. 252 (1991)). Neither party has identified any jurisdictional defect in this appeal, and we perceive none.

The Federal Aviation Act authorizes review in this court by any "person disclosing a substantial interest in an order issued by" the FAA Administrator. 49 U.S.C. § 46110(a). There would perhaps be an obstacle to our review of the FAA's Interpretation if the Administration's letter were not final action, but the FAA has not objected to our reviewing the letter as an "order" under section 46110(a) or otherwise contended that the Interpretation is unreviewable as non-final. *See* Br. of Respondent 1. At oral argument, the FAA disclaimed any non-finality bar to our review. We need not address finality *sua sponte* because finality is not jurisdictional under either the Administrative Procedure Act or the Federal Aviation Act.

The APA authorizes judicial review of "final agency action for which there is no other adequate remedy in a court," as well as "[a]gency action made reviewable by statute." 5 U.S.C. § 704. After a period of uncertainty in our circuit, it is "now firmly established" that finality under the APA is non-jurisdictional. *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 661 (D.C. Cir. 2010).

Like the APA's section 704, section 46110 of the Federal Aviation Act, on which Flytenow relies, authorizes judicial review of an "order." Unlike the APA, however, section 46110 does not impose any explicit finality requirement.

Rather, we have incorporated generally applicable finality principles into the analysis of what counts as an "order" under section 46110. *See, e.g.*, *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 411 (D.C. Cir. 2011) (citing *Bennett v. Spear*, 520 U.S. 154, 178 (1997)); *Vill. of Bensenville v. Fed. Aviation Admin.*, 457 F.3d 52, 68 (D.C. Cir. 2006) (same); *Puget Sound Traffic Ass'n v. Civil Aeronautics Bd.*, 536 F.2d 437, 438-39 (D.C. Cir. 1976) (noting that the Federal Aviation Act's review provision, "which gives this court power to review Board orders, has been judicially restricted to review of final agency orders"). Because the finality requirement under section 46110(a) is judicially imported from the APA, it is no more jurisdictional than the APA's own finality requirement. Our precedent confirms that finality under the Federal Aviation Act is a matter of judicial creation, allowing us to "avoid premature intervention in the administrative process." *CSI*, 637 F.3d at 411 (citing *Puget Sound*, 536 F.2d at 438-39).

Because finality is non-jurisdictional, we accept the FAA's decision not to pursue any such defense it might have had. This case presents no exceptional circumstances warranting our consideration of the potential finality bar despite its forfeiture. *See District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084-85 (D.C. Cir. 1984). Government litigants may sometimes "want to waive or forfeit certain non-jurisdictional, non-merits threshold defenses so as to permit or obtain a ruling on the merits." *Grocery Mfrs. Ass'n v. Envtl. Prot. Agency*, 693 F.3d 169, 185-86 n.5 (D.C. Cir. 2012) (Kavanaugh, J., dissenting). We do not second-guess the FAA's decision here.

11

III.

Flytenow characterizes the FAA's Interpretation as a significant deviation from the Administration's prior interpretation of its own regulations and asserts that such a shift requires notice and comment rulemaking under the Administrative Procedure Act. That argument is foreclosed by *Perez v. Mortgage Bankers Ass'n*, in which the Supreme Court expressly abrogated the doctrine of our circuit upon which Flytenow relies. 135 S. Ct. 1199, 1207 (2015) (abrogating *Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579 (D.C. Cir. 1997)). As the Supreme Court in *Perez* explained, the APA's "notice-and-comment requirement 'does not apply . . . to interpretative rules.'" *Id.* at 1206 (quoting 5 U.S.C. § 553(b)(A)) (omission in original). *Perez* tells us that its "exemption of interpretive rules from the notice-and-comment process is categorical . . . ." *Id.* The Interpretation at issue here is a quintessential interpretative rule, as it was "issued by an agency to advise the public of the agency's construction of the statutes and rules it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979)). We thus reject Flytenow's contention that the Interpretation is invalid for want of notice and comment rulemaking.

A.

On the merits, Flytenow objects that its pilots do not engage in "common carriage" and so cannot be required to comply with Part 119's common-carrier licensure requirements. Flytenow argues that the FAA has misconstrued the definition of common carriage. When we consider a challenge to the FAA's interpretation of its own regulations, the familiar *Auer v. Robbins* framework requires

us to treat the agency's interpretation as controlling unless "plainly erroneous or inconsistent with the regulation." 519 U.S. 452, 461 (1997). Even without such deference, we have no difficulty upholding the FAA's interpretation of its regulations in this case.

The FAA concluded that pilots offering their services on Flytenow.com would be common carriers. That conclusion rests on the FAA's interpretations of "compensation" and "holding out" as the FAA uses those two terms in its regulations. Flytenow objects that: (1) the FAA misinterpreted its regulations in finding that expense sharing under Flytenow's service would be "compensation" to participating pilots; and (2) the FAA erroneously concluded that pilots' participation on Flytenow.com would amount to "holding out" an offer of transportation to the public. Both of Flytenow's objections are unpersuasive.

*1. Compensation.* The FAA correctly interpreted its regulation prohibiting private pilots from receiving compensation. The FAA concluded that the exception from the general ban on receipt of compensation—allowing private pilots to engage in expense sharing in certain circumstances— did not redefine expense sharing as something other than compensation. That exception instead narrowly authorized some expense sharing notwithstanding the otherwise-applicable general ban on private pilots' receipt of compensation. Flytenow argues that the FAA's reading impermissibly treats the "exception to the definition [as] the same as the definition"—i.e., that it "contort[s]" the exception by treating what Flytenow says the regulation identifies as "not compensation" as if it were still compensation. Reply Br. 9. Flytenow misapprehends the FAA's analysis. The expense-sharing rule, by excepting certain expense sharing

from the ban on private pilots' receipt of compensation, creates a category of compensated flight that is permitted.

The text and structure of the regulation make clear that allowable expense sharing is still compensation, albeit an authorized subcategory. Under the heading "Private pilot privileges and limitations: Pilot in command," the rule explains that, "except as provided in paragraphs (b) through (h) of this section, no person who holds a private pilot certificate may act as pilot in command of an aircraft that is carrying passengers . . . for compensation or hire." 14 C.F.R. § 61.113(a). In other words, section 61.113 defines the only circumstances in which private pilots may receive compensation. Those are set forth in seven categories of compensation, including expense sharing, that are exempted from the general bar. *Id.* § 61.113(b)-(h). The most natural reading of that rule's language and structure—and the reading the FAA adopted—is that the exempted expense sharing is "compensation," but is nevertheless permitted in the identified contexts. The exceptions in paragraphs (b) through (h)— including the limited expense-sharing exception—set out acceptable forms of compensation; they do not change the underlying definition of compensation.

The FAA's position that expense sharing can be permitted compensation is consistent and well established. Since at least the 1980s, the FAA has explained that "any payment for a flight, even a partial payment, means that the flight is for compensation or hire." FAA Legal Interpretation Letter from John H. Cassady, Assistant Chief Counsel, Regulations & Enforcement Div., to Hal Klee, Executive Director, Pilots & Passengers (undated, identified by FAA as 1985), J.A. 26-27. "This is true even if the payment is made under the 'expense sharing' provisions . . . ." *Id.*; *see also* FAA Legal Interpretation from John H. Cassady, Assistant

Chief Counsel, Regulations & Enforcement Div., to Thomas Chero, Vice President – Legal, AVEMCO Ins. Co. (Dec. 26, 1985) (Chero Interpretation), J.A. 28. And as recently as 2011, the FAA explained that it "construes the term compensation very broadly; any reimbursement of expenses, including a pro rata share of operating expenses, constitutes compensation." Haberkorn Interpretation, J.A. 42 n.1. The FAA correctly concluded here, in keeping with its prior interpretation, that expense sharing is always compensation.

Flytenow argues that, where a pilot and her passengers share a common purpose, as Flytenow's service contemplates, expense sharing cannot be compensation within the meaning of the "common carrier" definition. Br. of Petitioner 19-21. But that analysis confounds two issues. The FAA applies the "common-purpose" test to identify the narrow circumstances in which admittedly private pilots may share expenses under section 61.113. *See* FAA Legal Interpretation Letter from Kenneth E. Geier, Regional Counsel, to Paul D. Ware (Feb. 13, 1976) (Ware Interpretation), J.A. 23; Chero Interpretation; FAA Legal Interpretation from Rebecca MacPherson, Assistant Chief Counsel for Regulations, to Guy Mangiamele (Mar. 4, 2009), J.A. 35-36; Haberkorn Interpretation. Here, however, the question is whether Flytenow pilots would be acting as private pilots, or instead as common carriers without adequate licensure. The common-purpose test has no bearing on whether compensation in the form of passengers' expense sharing, together with holding out to the general public, tends to show that a private pilot is operating as a common carrier.

Flytenow invokes an interpretation from a local field office that, it claims, read the regulations differently from all of the interpretations issued by the FAA's Office of the Chief Counsel. *See* Br. of Petitioner 20 (citing Legal Interpretation Letter from Loretta E. Alkalay, Regional Counsel, to Ron

Levy (Oct. 25, 2005)). To the extent that the Levy Interpretation concluded that, so long as the passenger and pilot share a common purpose, a private pilot may generally hold herself out as providing flights on an expense-sharing basis and remain in compliance with Part 119, it was erroneous. An anomalous local field office interpretation cannot control. *Cf. Paralyzed Veterans of Am.*, 117 F.3d at 587 ("A speech of a mid-level official of an agency, however, is not the sort of 'fair and considered judgment' that can be thought of as an authoritative departmental position."), *abrogated on other grounds by Perez*, 135 S. Ct. 1199. In sum, we reject Flytenow's effort to recast the common-purpose limitation as part of the definition of compensation rather than as part of an exception under which the FAA permits private pilots to receive compensation.

*2. Holding Out.* Flytenow's argument regarding the "holding out" element of common carriage is question-begging and incorrect. Flytenow contends that the limitation against pilots "holding out" is "codified in" section 119.5(k), which bars advertising or offering unauthorized service. Br. of Petitioner 24; 14 C.F.R. § 119.5(k). Section 119.5(k) states: "No person may advertise or otherwise offer to perform an operation subject to this part [governing air carriers] unless that person is authorized by the [FAA] to conduct that operation." Flytenow reads that restriction to mean that any pilot *not* subject to Part 119's stringent rules for air carriers *may* "advertise or otherwise offer" herself or himself as willing to provide expense-sharing services, without that conduct establishing the "holding out" element of the "common carrier" definition. *See* Brief of Petitioner 24-25.

As the FAA rightly notes, section 119.5(k) is not the codification of the "holding out" requirement. Rather, section

119.5(k) is a prohibition on advertisement of unauthorized services. The statute and regulations do not define "holding out"; the FAA instead uses "holding out" as that concept is defined through the common law, *see CSI Aviation*, 637 F.3d at 415; FAA Advisory Circular, J.A. 30, and applies it in a functionalist, pragmatic manner, *see* FAA Advisory Circular, J.A. 30; Haberkorn Interpretation, J.A. 42-43.

Flytenow's reliance on section 119.5(k) has the reasoning backwards. The central question in this case is whether Flytenow's pilots are "subject to this part"—*i.e.* Part 119 on commercial operation—and the answer depends on whether the pilots are acting as "air carriers," *see* 14 C.F.R. § 119.1(a)(1) ("This part applies to each person operating or intending to operate civil aircraft . . . [a]s an air carrier . . . ."). As noted above, an "air carrier" is a "common carrier." *See* 14 C.F.R. § 1.1 (defining "air carrier"). Section 119.5(k) does not define, but depends on, whether a pilot is operating as a common carrier, which turns in part on whether the pilot is "holding out."

Under the definition of "holding out" the FAA articulated in the 1986 circular, J.A. 30, we have no trouble finding that Flytenow's pilots would be doing so. Flytenow.com is a flight-sharing website putatively limited to members, but membership requires nothing more than signing up. Any prospective passenger searching for flights on the Internet could readily arrange for travel via Flytenow.com. Flytenow's statement to its members that its pilots may on a case-by-case basis decide not to accept particular passengers is not to the contrary. As the FAA noted in its circular, no "conclusive proof" that a pilot is not a common carrier can be gleaned from the absence of rate schedules, or pilots occasionally refusing service or offering it only pursuant to

separately negotiated contracts. FAA Advisory Circular, J.A. 30.

Finding that Flytenow's pilots are "holding out" does not lead to the absurd consequences of which Flytenow warns. *See* Br. of Petitioner 25. It is simply not accurate, as Flytenow fears, that "any pilot communicating an expense-sharing flight, for the sole purpose of identifying a common purpose, will now be considered holding out to provide common carriage." *Id.* Pilots communicating to defined and limited groups remain free to invite passengers for common-purpose expense-sharing flights. *See* Br. of Respondent 30. As the FAA notes, *id.*, nothing in the challenged Interpretation calls into question the FAA's reasoning or conclusions in its 1976 Ware Interpretation, in which the FAA opined that posting on a bulletin board is permitted in certain circumstances. J.A. 23. Nor does the Interpretation call into question the continuing vitality of the expense-sharing rule. *See* Br. of Petitioner 33. Private pilots continue to enjoy the right to share expenses with their passengers, so long as they share a common purpose and do not hold themselves out as offering services to the public.

B.

In its reply brief, Flytenow raises a new line of attack against the Interpretation, contending that it must be set aside because the FAA's definition of common carriage contravenes the common-law definition. "Ordinarily, we will not entertain arguments or claims raised for the first time in a reply brief." *Forman v. Korean Air Lines Co.*, 84 F.3d 446, 448 (D.C. Cir. 1996). As we have explained, considering such arguments "is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." *McBride v. Merrell Dow & Pharm.,*

*Inc*., 800 F.2d 1208, 1211 (D.C. Cir. 1986) (internal citations omitted).

In its opening brief to this court, Flytenow did not contest the FAA's definition of common carriage. To the contrary, it invoked the FAA Advisory Circular's articulation of the FAA's understanding of common carriage. *See* Br. of Petitioner 6 n.6, 11, 25. Thus, in its response, the FAA did not defend its Interpretation on the ground that its definition of common carriage is in keeping with the common law, aside from making passing reference to a decision in this court that noted the common-law pedigree of "common carriage." *See* Br. of Respondent 30 (citing *CSI*, 637 F.3d at 415). We therefore do not consider Flytenow's argument that the FAA's decision contravenes the common law. That argument is forfeited.

IV.

Flytenow raises several other statutory and constitutional claims. The government argues that these claims are barred by the Federal Aviation Act's exhaustion requirement, 49 U.S.C. §46110(d), because Flytenow did not raise them before the agency. The exhaustion requirement does not apply here, however, because there was a "reasonable ground" for Flytenow's failure to raise its arguments before the agency. *Id*. The Interpretation did not result from the type of administrative "proceeding" in which Flytenow was notified of an agency proposal and had a chance to raise statutory or constitutional objections. *See Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 8 (D.C. Cir. 2011); *cf. Cont'l Air Lines v. Dep't of Trans.*, 843 F.2d 1444, 1455-56 (D.C. Cir. 1988). Remand to the FAA in this case would not serve the policies that exhaustion is meant to protect. The agency has not identified any factual disputes

relevant to Flytenow's statutory or constitutional objections, nor does it hint that it missed any opportunity to apply its expertise or revise its rule to avoid Flytenow's objections. *See generally McKart v. United States*, 395 U.S. 185, 194 (1969). Flytenow was not required to have raised these challenges before the FAA.

A.

Flytenow argues that the FAA has exceeded its jurisdiction under the Federal Aviation Act by regulating private communications on a website. That argument misreads the statute and misapprehends the role of the FAA. The Federal Aviation Act directs the FAA to regulate common carriers. 49 U.S.C. § 44705. As noted above, the "*sine qua non*" of a common carrier is "some type of holding out to the public." *CSI*, 637 F.3d at 415.

The FAA must consider whether air carriers hold themselves out to the public to determine which FAA rules apply. In considering what information pilots communicate via Flytenow.com, and to whom, the FAA relies on the communications as evidence of "holding out," thereby reaching conduct the Act indisputably authorizes it to regulate. Flytenow's complaint that the FAA treats "all Internet-based communications by a pilot, concerning a proposed expense-sharing flight" as "necessarily 'holding out'" is inaccurate. Br. of Petitioner 27. The FAA opined only on the type of flight-sharing program described in Flytenow's and AirPooler's requests for legal interpretation. *See* J.A. 60, 61-62. Other kinds of internet-based communications, such as e-mail among friends, for example, seem unlikely to be deemed "holding out" under the FAA's Interpretation.

If accepted, Flytenow's argument that the FAA lacks statutory authority to consider the evidentiary value of Flytenow's speech would frustrate the FAA's enforcement of the Federal Aviation Act. The Act calls on the FAA to regulate certain aspects of the commercial speech of pilots and airlines. For example, the FAA regulates in detail airline computerized reservation systems, requiring that they display particular information, including schedules and fares, in particular ways. 14 C.F.R. §§ 255.1-.8. The FAA requires that airline websites disclose on-time performance data for any domestic flight for which the sites provide schedule information. *Id.* § 234.11(b). The FAA also requires disclosure of code-sharing arrangements among airlines, and bans airlines from holding out code-sharing flights for sale without such disclosure. *Id.* §§ 257.4-.5. In each such case, the FAA's speech-related requirement is consistent with its statutory mandate.

### B.

Flytenow's three constitutional arguments are unavailing.

***1. First Amendment***. Flytenow challenges the Interpretation as a First Amendment violation on the grounds that: (1) the Interpretation imposes an unconstitutional prior restraint on Flytenow's commercial speech; and (2) the Interpretation is an impermissible content-based regulation.

Flytenow misdescribes the Interpretation as a prior restraint. *See generally Alexander v. United States*, 509 U.S. 544, 549-54 (1993). The Interpretation does not bar any speech in advance, but sets forth the FAA's view that pilots advertising their services on Flytenow.com risk liability if they are not licensed for the offered services. Thus, the Interpretation explains the possible consequences of speech, but does not enjoin it. In any event, the advertising of illegal

activity has never been protected speech. *See, e.g.*, *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388-89 (1973).

The FAA's reliance on Flytenow's speech as evidence of "holding out" is fully compatible with the First Amendment. It is well settled that "the First Amendment allows 'the evidentiary use of speech to establish the elements of a crime or to prove motive or intent.'" *Whitaker v. Thompson*, 353 F.3d 947, 953 (D.C. Cir. 2004) (quoting *Wisconsin v. Mitchell,* 508 U.S. 476, 489 (1993)). In *Whitaker*, the court upheld the FDA's reliance on a drug company's speech (via its drug labeling) to infer that company's intent to sell a drug for purposes for which it was not authorized. *Id.* In this case, the FAA is doing much the same thing: it is using speech (postings on Flytenow.com) as evidence that pilots are offering service that exceeds the limits of their certifications.

Any incidental burden the FAA's regulations impose on pilots' speech does not violate the First Amendment because the regulations further an important government interest unrelated to the suppression of free expression. *United States v. O'Brien*, 391 U.S. 367, 377 (1968). Barring pilots from holding themselves out to the public to provide services for which they are not licensed directly advances the government's interest in "promot[ing] safe flight of civil aircraft in air commerce." 49 U.S.C. § 44701(a). Seeking to prevent advertising of services by or on behalf of pilots not licensed to offer them is a constitutionally permissible way to advance the policy that "the general public has a right to expect that airlines which solicit their business operate under the most searching tests of safety." *Woolsey v. Nat'l Transp. Safety Bd.*, 993 F.2d 516, 522 (5th Cir. 1993).

*2. Equal Protection*.   Flytenow's Equal Protection challenge also fails.  Flytenow makes no claim that the FAA's classification implicates any fundamental right or categorizes on any inherently suspect basis, but contends that the FAA's regulations cannot be sustained under rational basis review. *See, e.g.*, *Fed. Commc'ns Comm'n v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-15 (1993).  To succeed, Flytenow would have to negate "every conceivable basis which might support" the challenged classification.  *Id.* at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 40 U.S. 356, 364 (1973)) (internal quotation marks omitted).

The FAA's distinction between pilots offering expense-sharing services on line to a wide audience and those offering expense-sharing services to a limited group is justified: holding out to the public creates the risk that unsuspecting passengers, under the impression that the service and its pilots lawfully offer common carriage, will contract with pilots who in fact lack the experience and credentials of commercial pilots.  Regulators have good reasons to distinguish between pilots who are licensed to offer services to the public and those who are not, as other courts have recognized.  *See Woolsey*, 993 F.2d at 522.

*3. Vagueness*.  Finally, there is no credible claim that the Interpretation is unconstitutionally vague.  The FAA announced that pilots offering expense-sharing flights on Flytenow.com are holding themselves out to provide common carriage and are therefore subject to Part 119.  The Agency was clear in its application of its regulation to Flytenow: "You suggest there is no holding out . . . .  We disagree. . . . [Flytenow.com] is designed to attract a broad segment of the public interested in transportation by air."  J.A. 62.  Flytenow is in no position to assert a facial vagueness challenge.  "[A] plaintiff who engages in some conduct that is clearly

proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 495 (1982)).

* * *

For the foregoing reasons, Flytenow's petition for review is denied.

*So ordered.*