LOTTINGER, Judge.
The plaintiff in this suit, workmen’s compensation insurer of the employer of one Ovey Smith who was killed as the result of being struck by an airplane belonging to the defendant W. H. Stewart S¿ Sons, Inc. and piloted by the defendant Charles Edward Stewart, seeks to recover from the latter the workmen’s compensation payments made to the decedent’s widow and minor children together with attorney fees. The trial judge rendered judgment rejecting the plaintiff’s demands following which an appeal was taken to the Supreme Court. That Court, by judgment rendered April 1, 1957, transferred the matter to us. See 232 La. 527, 94 So.2d 655.
The trial judge rendered written reasons for judgment wherein he found as follows:
“On the date Ovey Smith was killed, defendant Charles Edward Stewart was piloting a light plane for the defendant corporation spraying the herbicide 2-4 D over a field of rice grown by Bennett Fontenot. His loading point was at another field approximately one-half mile distant from the actual operation and by pre-arrangement with the landowner two flagmen were to be furnished at the scene, one at each end of the field to be sprayed, whose job was to flag the plane and provide markers for the pilot in making his flight. After each pass, the duty of the flagman is to move a fixed number of steps to the left or right, as the case may be, and hold the flag above his head so that the pilot may see the same, line up his plane with the two flags, and provide a uniform covering of the entire area to be sprayed. (Due to the shape of this field a third flagman, the deceased, was furnished for *913 the spraying of certain extended portions of the field. After spraying one extended portion of the field and while the center of the field was being sprayed this third man was to move over to the opposite extended portion and then resume his duties as a flagman.) In order to prevent drift of the substance to be sprayed, and also to insure complete coverage, it is necessary and in fact customary that the plane fly low to the ground, in this particular case about two feet above the top of the rice, or from four to five feet above the surface of the land. Spraying herbicides, fertilizers, dust, and seeding crops by air has become an integral part of the rice growing industry in this section of the state, and virtually every rice farmer, at one time or another during the planting and growing season, has occasion to resort to this method of procedure. Agricultural flying is, therefore, a very familiar part of rice farming and an important and necessary one.
“The deceased, Ovey Smith, was an experienced flagman, and had been used as such by Mr. Fontenot on pri- or occasions. (Tr. page 24) He had served as flagman on the morning of his death, and he had been instructed by his employer that he was not to flag for the plane beyond the point marked ‘B’ on the plat P-6 which is in evidence. Due to the shape of the field, the plane traveled North and South, working from the West side over to the East side. Smith had been instructed to flag along the line A-B, then cross the field and flag along the line E-F on the opposite side. He knew and had in fact observed the low altitude at which this plane was flying when crossing between the flagmen.
“Stewart, on the other hand, was flying a plane known as 440 Stearman which is the type commonly used by agricultural flyers in this vicinity. He was, according to Mr. Babin, operating at a speed slightly higher than is normal, as this witness stated that such operations are usually carried on at a speed of from 90 to 100 miles per hour and Stewart stated that on the morning in question he was flying at approximately 120 miles per hour. (Speed was not a factor however.) His vision was restricted to the area beyond 700 or 800 feet in front of his plane, which is normal with this type of craft. (Italics ours.)
“Whether or not Stewart was guilty of any negligence at all in this case, and after reviewing the testimony the Court is hard put to say that he was, the actions of Smith after reaching point ‘B’, where he was to stop flagging, was the proximate cause of this accident.
“It is a general rule that actions involving aircraft are to be governed by the ordinary rules of negligence. Southern Air Transport v. Gulf Airways, Inc., 1949, 215 La. 366, 40 So.2d 787. The rule is thus stated in American Jurisprudence:
“ ‘An airplane is not an inherently dangerous instrument, although in flight, when improperly used or in the hands of an incompetent pilot, it may be. Hence, in the absence of statute, the ordinary rules of negligence and due care obtain with respect to the operation of aircraft. The degree of care required of one not carrying passengers for hire is ordinary care, that is, that degree of care which the great mass of men, or an ordinarily prudent or reasonably careful person, would use under the same or similar circumstances. He is not required to exercise the highest degree of care, although the care which he may be called upon to exercise in the particular instance may be very high under the circumstances. Whether the particidar pilot exercised the diligence required of him by law is to be determined by *914 the standard of ordinary care and diligence required of pilots of ordinary skill under the same circumstances and conditions. Things which a pilot operating a plane with that degree of care which is commensurate with the situation and circumstances must consider include the weather conditions, the wind, the visibility, the type of plane, the number of passengers in it, the place where and the altitude at which a turn or descent is attempted the position of the motor parkway, etc.’ (6 Am.Jur. p. 36 Sec. 60.)
And again:
“ ‘It seems to be an accepted principle of law that an aviator who descends upon the premises of another is liable for the damages necessarily and directly resulting therefrom. The Uniform Aeronautics Act makes the owner of every aircraft absolutely liable for injuries to persons or property on the land or water beneath, caused by the ascent, descent, or flight of aircraft or the dropping or falling of any object therefrom whether such owner was negligent or not, unless the injury is caused in whole or part by the negligence of the person injured.’ (6 Am. Jur. p. 39, Sec. 65.) (Italics theirs.)
“Here, Ovey Smith was actually a part of the operation then in progress. He was not a bystander or innocent third party having no knowledge or warning of the danger from the airplane, as would be a passerby or neighboring farmer, but he was rather a person having complete information as to the flight of the plane, its speed, direction and even the path it was to follow. When he undertook to cross from point ‘B’ to point ‘E’ therefore, he was under a most compelling duty to keep this danger in mind and under observation at all times.
“It is abundantly shown by the evidence that there is a small lateral canal running through Fontenot’s field between these two points, with levees on each side approximately two feet in height. Under these circumstances, when Smith started across the field he was most negligent in failing to keep Stewart’s plane under observation, and in failing to duck, lie flat on the ground, or take other action to remove himself from the path of destruction.
“For the foregoing reasons, it is ordered, adjudged and decreed that the suit filed herein by Maryland Casualty Company, Plaintiff, under subrogation as Workmen’s Compensation Insurer of Bennett Fontenot, employer of Ovey Smith, deceased, be and the same is hereby dismissed, at plaintiff’s costs.”
A review of the record discloses the trial judge’s conclusions, both factual and legal, to be well substantiated and they will not, therefore, be disturbed.
Judgment affirmed.