KHIRY COSEY ON BEHALF     *       NO. 2019-CA-0756
OF HER MINOR CHILDREN,
CORBIN HILLIARD AND       *
ALLYSSA HILLIARD
INDIVIDUALLY AND ON       *        COURT OF APPEAL
BEHALF OF THE ESTATE OF
REGINALD HILLIARD, JR;      *        FOURTH CIRCUIT
TIARA LIGGINS ON BEHALF
OF HER MINOR CHILD,     * * * * * * *    STATE OF LOUISIANA
TAKHIREE HILLIARD
INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF
REGINALD HILLIARD, JR.;
TUKEYA JARVIS
INDIVIDUALLY AND ON
BEHALF OF THOMAS
HILLIARD; AND DOROTHY
JARVIS

VERSUS

FLIGHT ACADEMY OF NEW
ORLEANS, LLC; JAZZ
AVIATION, LLC; QBE
INSURANCE CORPORATION;
CHRISTIANSEN AVIATION,
INC.; ABC INSURANCE
COMPANY; SIGNATURE
FLIGHT SUPPORT
CORPORATION; ALLIANZ
GLOBAL CORPORATE &
SPECIALTY SE; THE ESTATE
OF JAMES BIONDO; AND DEF
INSURANCE COMPANY

<u>CONSOLIDATED WITH:</u>         <u>CONSOLIDATED WITH:</u>

KHIRY COSEY ON BEHALF OF      NO. 2019-CA-0785
HER MINOR CHILDREN,
CORBIN HILLIARD AND
ALLYSSA HILLIARD
INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF
REGINALD HILLIARD, JR;
TIARA LIGGINS ON BEHALF OF
HER MINOR CHILD, TAKHIREE
HILLIARD, ET AL.

**VERSUS**

**FLIGHT ACADEMY OF NEW ORLEANS, LLC; JAZZ AVIATION, LLC; QBE INSURANCE CORPORATION; CHRISTIANSEN AVIATION, INC.; ABC INSURANCE COMPANY; SIGNATURE FLIGHT SUPPORT CORPORATION; ALLIANZ GLOBAL CORPORATE & SPECIALTY SE; THE ESTATE OF JAMES BIONDO; AND DEF INSURANCE COMPANY**

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2016-09317 C\W 2016-11198, DIVISION "G-11"
Honorable Robin M. Giarrusso, Judge
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *
(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Joy Cossich Lobrano)

John D. Sileo
Casey W. Moll
LAW OFFICE OF JOHN D. SILEO, LLC
320 North Carrolton Avenue, Suite 101
New Orleans, LA 70119

Ike Spears
SPEARS & SPEARS
1631 Elysian Fields Ave.
New Orleans, LA 70117

Roderick "Rico" Alvendia
Jeanne K. Demarest
Kurt A. Offner
ALVENDIA, KELLY & DEMAREST, L.L.C.
909 Poydras Street, Suite 1625
New Orleans, LA 70112-4500

Eric J. Allen
ZEHL & ASSOCIATES, PC
2700 Post Oak Blvd., Suite 1120
Houston, TX 77056

Cleo Fields
THE FIELDS LAW FIRM, LLC
2147 Government St.
Baton Rouge, LA 70806
  COUNSEL FOR PLAINTIFF/APPELLANT


D. Russell Holwadel
Heather A. England Reznik
ADAMS HOEFER HOLWADEL, L.L.C.
400 Poydras Street, Suite 2450
New Orleans, LA 70130

Stephen P. Hall
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130
  COUNSEL FOR DEFENDANT/APPELLEE


**AFFIRMED**

**NOVEMBER 12, 2020**

*DLD*
*RLB*
*JCL*

This is an appeal of a trial court judgment granting motions for summary judgment in favor of defendants, Christiansen Aviation, Inc., and its insurer, Old Republic Insurance Company. After a *de novo* review of the record, we find that the trial court properly granted the summary judgments, and we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

This lawsuit arises out of a tragic accident that occurred on August 27, 2016, when a Cessna 172 airplane, piloted by James Biondo, crashed into Lake Pontchartrain. Mr. Biondo had been hired to perform an aerial tour of New Orleans by Briana Davis; Ms. Davis and her boyfriend, Reginald Hilliard, Jr., were passengers in the airplane at the time of the accident. Mr. Biondo and Mr. Hilliard both perished as a result of the accident, while Ms. Davis survived. Mr. Hilliard's surviving family members filed a lawsuit seeking damages resulting from the crash.[1] The suit named a number of parties, including Flight Academy of New Orleans ("FANO"), Christiansen Aviation and its insurer, Old Republic.

---

[1] Mr. Hilliard's surviving family members are identified as his minor children, on whose behalf suit was filed by their mothers: Corbin Hilliard and Alyssa Hilliard (whose mother is Khiry Cosey) and Takhiree Hilliard (whose mother is Tiara Liggins). Also named as plaintiffs are

On January 1, 2019, Christiansen Aviation, the owner and lessor of the airplane, filed a motion for summary judgment seeking to be dismissed from this action on the basis that the plaintiffs would be unable to bear their burden of proof that any negligence on its part caused or contributed to the August 27, 2016 crash. Its insurer, Old Republic, filed its own motion for summary judgment, as its liability is contingent on the liability of its insured, Christiansen Aviation.

The trial court conducted a hearing on the motions for summary judgment on February 15, 2019. By judgment dated February 26, 2019, the trial court granted the motions for summary judgment, dismissing the plaintiffs' claims against Christiansen Aviation and Old Republic, with prejudice. This appeal followed.

**DISCUSSION**

The summary judgment procedure "is favored" and "is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2).

It is well-settled that "[a]ppellate courts review the grant or denial of a motion for summary judgment *de novo*, employing the same criteria that govern the trial court's determination of whether summary judgment is appropriate." *Maddox v. Howard Hughes Corp.*, 19-0135, p. 4 (La. App. 4 Cir. 4/17/19), 268

---

Tukeya Jarvis, Mr. Hilliard's mother, and Dorothy Jarvis, Mr. Hilliard's grandmother. Tukeya Jarvis appears in her own capacity and in her capacity as mother of Mr. Hilliard's minor brother, Thomas Hilliard.

Ms. Davis filed a lawsuit as well for her personal injuries that was consolidated with the Hilliard plaintiffs' lawsuit; her suit was settled and has been dismissed.

So.3d 333, 337 (citations omitted).  A "*[d]e novo* review generally 'involves examining the facts and evidence in the record, without regard or deference to the judgment of the trial court or its reasons for judgment.'" *Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 19-0896, p. 10 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1216 (quoting *Hooper v. Hero Lands Co.*, 15-0929, p. 12 (La. App. 4 Cir. 3/30/16), 216 So.3d 965, 973-74.

Summary judgment is appropriate and shall be granted "[a]fter an opportunity for adequate discovery, . . . [when] the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).  The burden of proof rests with the party moving for summary judgment; however, this burden does not require that the moving party "negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense.  La. C.C.P. art. 966(D)(1). The adverse party has the "burden of produc[ing] factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id*.

There is no dispute in this case that Christiansen Aviation is the owner of the airplane involved in the accident which it leased to FANO, a company whose business includes providing recreational aerial tours of the New Orleans area.

3

FANO leased the airplane continuously since March 4, 2013, or for a period of three years and five-and-a-half months prior to the accident.

The issue in this case turns on whether, under the circumstances of this case, there are any theories under which liability can be assessed against Christiansen Aviation, as the lessor of the airplane. We note the record is void of any evidence that expressly indicates the cause of the accident. Christiansen Aviation indicates in its appellate brief that no defect or malfunction of the plane was detected when the airplane was inspected after the accident, and that the evidence points to pilot error as its cause. Plaintiffs have not disputed either of these statements and have not alleged that the airplane had a defect or other condition that caused the accident. The claims of plaintiffs against Christiansen Aviation, therefore, sound in negligence.

In its memorandum in support of its motion for summary judgment, Christiansen Aviation outlined the plaintiffs' claims against it as follows; that Christiansen Aviation: (1) "knew or should have known that the subject Cessna 172 was not fit for flight and that the use of the aircraft under such conditions could cause serious injury;" (2) "so negligently and carelessly maintained, inspected, operated, and/or services the subject Cessna 172 aircraft that it failed catastrophically during a landing approach;" and (3) "negligently entrusted" the aircraft to FANO.[2]  In their first supplemental and amending petition, plaintiffs restated their negligent entrustment claims as follows:

_____

[2] The record does not contain copies of Petition for Damages, nor any of the supplemental and amending petitions. None of these pleadings were included as exhibits to the Motion for

4

Christiansen Aviation, leased a dangerous instrument (the aircraft) to the lessees even though the Christiansen Aviation knew, or should have known, that the lessees were likely to cause an accident in risk to others.

\* \* \* \*

The lessor knew or should have known of the incompetence and/or knew or should have known that the aircraft was being used as a commercial touring aircraft and therefore required additional safety precautions, safety briefings, equipment, and instruments yet lessor took no reasonable steps to inspect the lessees' operations or require compliance with reasonable safe practices or regulations prior to entering the lease and then continued to operate under the lease without taking any of these adequate measures;

\* \* \* \*

The lessor has a duty to provide oversight to ensure that passengers fly on airplanes that are adequately selected, equipped, safely maintained, and operated by safely trained and qualified pilots; and

\* \* \* \*

Because Christiansen Aviation was negligent and grossly negligent in leasing the aircraft to the lessees without reasonable steps to make sure the lessees were complying with regulations or otherwise operating its aircraft safely, Defendant Christian Aviation is liable to plaintiff.

In support of its motion for summary judgment, Christiansen Aviation contended that the plaintiffs would be "unable to meet their burden of proving that any negligence on the part of Christiansen Aviation caused or contributed to the accident at issue." In this regard, it makes several arguments. First, pursuant to the lease between it and FANO, FANO undertook the obligation to maintain,

Summary Judgment nor any other supporting or opposing memoranda. Because plaintiffs have not disputed the characterization of their allegations by Christiansen, we accept these as the allegations against Christiansen Aviation.

inspect and repair the airplane. Second, the lease required FANO to allow only properly certified pilots to operate the airplane. Third, under the terms of the lease, FANO maintained "operational control" over the airplane. Fourth, Christiansen Aviation exercised no control over the airplane. Fifth, under the provisions of the lease, neither FANO nor Christiansen Aviation would be responsible for the acts or omissions of the other. Lastly, it maintains that, under the facts alleged, plaintiffs have failed to assert a legally cognizable negligent entrustment claim.

In opposition to Christiansen Aviation's motion for summary judgment, plaintiffs advance several arguments. Generally characterizing Christiansen Aviation's "approach . . . prior to and throughout the leasing of its aircraft" as "extraordinarily nonchalant and negligent," plaintiffs maintain that Christiansen Aviation, "as the owner of a potentially dangerous instrument, may be held to a higher, extraordinary standard of care, particularly in light of its failure to do anything to inquire about FANO, its operations, and/or its pilots." They contend that it breached even an ordinary standard of care by failing "to conform its conduct and standard of care to a reasonable person in like circumstances."

Christiansen Aviation's breach was allegedly the result of several failures, including the failure to take "minimal, reasonable steps to ensure that FANO was a responsible operator prior to and/or during the three-and-a-half years in which FANO flew the plane." The plaintiffs then cite various specific failures on Christiansen Aviation's part which are generally summarized as failing to "at least meet[] with the operator, inquiring about the operator's qualifications and safety

6

measures, understanding the operator's use of the plane, and taking some reasonable steps to monitor the operator's actions and safety standards at some point during the term of the lease."

Plaintiffs also contend that Christiansen Aviation failed to properly vet FANO prior to leasing to it, failed to follow its own internal vetting procedure before leasing its airplane to it, and failed to act "as a reasonable and prudent aircraft owner prior to and during the lease of the aircraft to FANO." They further contend that Christiansen Aviation failed to request and examine documentation "verifying FANO's licensing, skill, qualifications, maintenance schedule, intent on usage of the aircraft, or operations in general over a three-and-half-year lease term."

At the outset, the parties do not identify and we know of no statutes or regulations under Louisiana law that apply to aviation activities such as those undertaken by FANO, nor any state regulations regarding the leasing of airplanes, even the leasing of an airplane for the purposes of recreational touring.[3] Aviation activities are, on the other hand, regulated by the Federal Aviation Administration ("FAA"), whose purpose is to "promote safe flight of civil aircraft." 49 U.S.C. §44701. "To that end, the FAA is empowered to regulate nearly every aspect of

---

[3] We recognize that Title 2 of Louisiana's Revised Statutes pertains to "Aeronautics" and that "[a]eronautics is defined therein as "the act or practice of the art and science of transportation by aircraft, and operations, construction, repair, or maintenance of aircraft, airports, landing fields, landing strips, air navigation facilities, or air instruction." La. R.S. 2:1(2). There is nothing, however, within Title 2 which sets forth any duties vis-à-vis the lessor/owner of an aircraft and its lessee.

7

private and commercial flight, including licensing and regulation of pilots and their operations." *Flytenow, Inc. v. F.A.A.*, 808 F.3d 882, 885 (D.C. Cir. 2015).

Among these federal regulations are those found under Title 14 of the Code of Federal Regulations, "Aeronautics and Space." These regulations include those for "[p]assenger carrying flights for compensation or hire" (*See* 14 C.F.R. §91.147) and "National Air Tour Safety Standards," found within Part 136, "Commercial Air Tours and National Parks Air Tour Management."

Under 14 C.F.R. §91.147(b), "[a]n Operator must comply with the safety provisions of part 136, subpart A of this chapter, and apply for and receive a Letter of Authorization from the responsible Flight Standards office." While the term "operator" is not defined, "operational control" is defined "with respect to a flight, [as] the exercise of authority over initiating, conducting or terminating a flight." 14 C.F.R. §1.1. An "operator" necessarily would be one with "operational control" over a flight.

There can be no question that the "operator" in this case is FANO. Attached to Christiansen Aviation's supporting memorandum is the Letter of Authorization issued to FANO, that authorizes FANO, as the operator, to "[c]onduct commercial air tour operations under 14 CFR Section 91.147." There can be no dispute that this Letter applies to FANO, alone, and does not confer to Christiansen Aviation the authority to conduct any aerial tours either directly or by extension.

The National Air Tour Safety Standards provide specific rules for air tour operations, which applies solely "to each person operating or intending to operate a

commercial air tour in an airplane." 14 C.F.R. §136.1(a). Again, here, it is FANO who operated the airplane for commercial tours, and the standards for safety, thus, apply to it, alone. There is nothing in the regulations suggesting that the safety standards can be expanded so as to apply to a party, such as Christiansen Aviation, which does not actually "operate" or "intend to operate" commercial aerial tours. Nor is there any basis for imposing liability on Christiansen Aviation for "failing to provide safety instructions in its aircraft," as plaintiffs contend. Plaintiffs cite no law, regulation or other provision mandating that the owner of an airplane provide written safety instructions.

However, there are federal regulations, the National Air Tour Safety Standards, 14 C.F.R. §136.1 *et. seq.*, which apply "to each person operating or intending to operate a commercial air tour in an airplane." 14 C.F.R. §136.1(a). Those regulations place the responsibility of providing safety briefings before an air tour with the pilot, alone. 14 C.F.R. §136.7, dealing with passenger briefing, provides:

> (a) Before takeoff each pilot in command shall ensure that each passenger has been briefed on the following:
>
> (1) Procedures for fastening and unfastening seatbelts;
>
> (2) Prohibition on smoking; and
>
> (3) Procedures for opening exits and exiting the aircraft.
>
> (b) For flight segments over water beyond the shoreline, briefings must also include:
>
> (1) Procedures for water ditching;

9

(2) Use of required life preservers; and

(3) Procedures for emergency exit from the aircraft in the event of a water landing.

Another safety obligation is found at 14 C.F.R. §136.9(a), which requires "the operator and pilot in command of commercial air tours over water beyond the shoreline [to] ensure that each occupant is wearing a life preserver from before takeoff until flight is no longer over water," or, under certain circumstances, to have "a life preserver . . . readily available for its intended use and easily accessible to each occupant." 14 C.F.R. §136.9(b).

These federal regulations clearly apply to operators and pilots and cannot be construed to apply to any other party, including the owner of an airplane who is neither an operator nor a pilot. Nor are these responsibilities delegable to third parties. Accordingly, we find no authority under federal law by which the duties to ensure the safety of passengers in a commercial air touring enterprise can be extended to an owner-lessor of an airplane which is not its operator or pilot.

We also note that, under federal law, there is a limitation of liability found in Title 49, "Transportation," under which the Department of Transportation was established for "[t]he national objectives of general welfare, economic growth and stability, and security of the United States" and to serve the purpose of "the development of transportation policies and programs that contribute to providing fast, safe, efficient, and convenient transportation." 49 U.S.C.A. §101. While Title 49 applies in the context of "air commerce," which is defined as "foreign air commerce, interstate air commerce, the transportation of mail by aircraft, the

operation of aircraft within the limits of a Federal airway, or the operation of aircraft that directly affects, or may endanger safety in, foreign or interstate air commerce," 49 U.S.C.A. §40102 (a), and there is insufficient information in the record to determine whether it applies to this matter, we note that it contains an express provision limiting the liability of the lessor of an aircraft. 49 U.S.C.A. §44112 (b),[4] which provides:

> **Liability.**--A lessor, owner, or secured party is liable for personal injury, death, or property loss or damage only when a civil aircraft, aircraft engine, or propeller *is in the actual possession or operational control of the lessor*, owner, or secured party, and the personal injury, death, or property loss or damage occurs because of—
>
> > (1) the aircraft, engine, or propeller; or
> >
> > (2) the flight of, or an object falling from, the aircraft, engine, or propeller.[5]
>
> (Emphasis added).

Cases interpreting this statute have consistently held that "a lessor cannot be liable for personal injury or death on an aircraft it owns unless the lessor 'is in the actual possession or operational control' of the flight." *Escobar v. Nevada Helicopter Leasing LLC*, No. CV 13-00598 HG-WRP, 2020 WL 1076107, at *2 (D. Haw. Mar. 6, 2020). As the *Escobar* Court noted, the statute "provides protection from liability only when the aircraft's lessor possesses neither *actual possession nor actual control*." *Id*. (emphasis supplied; internal citation omitted). That is, "[f]or liability to attach to a lessor, the statute requires actual possession or

---

[4] This provision is found in Title 49, "Transportation," Subtitles VII, "Aviation Programs," Part A, "Air Commerce and Safety," Subpart III, "Safety" and Chapter 441. "Registration and Recordation of Aircraft."

[5] "Lessor" is defined in the statute as "a person leasing for at least 30 days a civil aircraft, aircraft engine, or propeller" and "owner" is defined as "a person that owns a civil aircraft, aircraft engine, or propeller." 49 U.S.C.A. §44112 (a)(1) and (2).

11

actual operational control of the aircraft by the lessor at the time of the injury-causing accident." *Id.* (citing *In re Lawrence W. Inlow Acc. Litigation*, 2001 WL 331625, at *18 (S.D. Ind. Feb. 7, 2001). *See also*, *Salles v. Leasing*, No. 115-CV-457, 2015 WL 10912053, at *1 (W.D. Mich. Nov. 4, 2015)("The [FAA] limits the liability of owners of aircraft when the owner does not . . . possess or control the aircraft."); *Matei v. Cessna Aircraft Co.*, 35 F.3d 1142, 1146 (7th Cir. 1994).

It is clear that, under federal law, a lessor of an airplane cannot be held liable unless it has possession or control of the airplane. Here, there is no dispute that Christiansen had neither and, therefore, cannot be held liable for the accident under federal law.

Christiansen Aviation raises the issue of whether the plaintiffs' claims are preempted by federal law and notes that there are numerous cases finding state law claims arising out of aircraft accidents to be preempted by federal laws. Christiansen Aviation cites *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363 (3d Cir. 1999) for its contention that "state law standards of care are completely preempted by federal aviation safety standards in personal injury actions."[6] *Abdullah* did, in fact, hold that, "because of the need for one, consistent means of regulating aviation safety, the standard applied in determining if there has been careless or reckless operation of an aircraft, should be federal; state or territorial regulation is preempted." *Id*. at 372. However, while *Abdullah* found "implied federal preemption of the entire field of aviation safety," *Id*., at 365, the Court recognized that "the traditional state and territorial law remedies continue to exist for violation

---

[6] Many of the cases dealing with the preemption issue consider the issue in the context of state laws which may conflict with the federal aviation laws. In this case, there are no specific state laws which are at odds with the federal aviation laws. We note, too, that some cases have found that certain state law claims are not preempted. *See Retzler v. Pratt & Whitney Co.*, 309 Ill. App. 3d 906, 723 N.E.2d 345 (1999); *Vreeland v. Ferrer*, 71 So.3d 70, 84 (Fla. 2011)

of those standards" because "[f]ederal preemption of the standards of care can coexist with state and territorial tort remedies." Id. at 375.

In the instant matter, plaintiffs' claims against Christiansen Aviation arise not from the actual negligence of FANO's pilot, but from its alleged failures prior to leasing the airplane to FANO and its lack of oversight of FANO during the pendency of the lease. No claim could be asserted against Christiansen Aviation for Biondo's negligence, as we know of no cases finding a lessor liable to third parties for the negligence of its lessee's employee under similar circumstances. "It is well entrenched in Louisiana law that the negligence of a lessee in the exclusive physical control of the object of the lease cannot be imputed to the lessor." *Cenance v. Tassin*, 03-1379, p. 4 (La. App. 4 Cir. 3/3/04), 869 So.2d 913, 916.

The issue of a lessor's liability to third parties arises most often in the context of vehicle lease cases or premises liability actions, the latter of which is clearly inapplicable here. In vehicle lease cases, an owner may be liable under a negligent entrustment theory, for which, as discussed more fully *infra*, there is no basis in this case. Nor is there a basis for liability under La. C.C. art. 2317.1, which provides that "[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." Here, there is no indication that the airplane owned by Christiansen Aviation was defective (and, therefore, the issue of Christiansen Aviation's knowledge of a defect is moot).

It is clear that Louisiana law no longer recognizes strict liability based solely upon ownership. *See Sewell v. Sewerage & Water Bd. of New Orleans*, 18-0996,

13

p. 4, n.7 (La. App. 4 Cir. 5/29/19), --- So.3d ----. 2019 WL 2305673, *writ denied*, 19-01166 (La. 10/15/19), 280 So.3d 612 ("traditional[] notions of strict liability have been nearly entirely abrogated" by amendments to the Civil Code.")(internal citation omitted). Indeed, "La. C.C. art. 2317.1 effectively abrogates strict liability in cases involving defective things and imposes a negligence standard based on the owner or custodian's knowledge or constructive knowledge of the defect." *Griffith v. Universal Furniture House, Inc.*, 07-1551, p. 4 (La. App. 4 Cir. 7/30/08), 990 So.2d 739, 741. "Liability arises out of a defendant's legal relationship to the thing based on the defendant's custody or control of the thing, not solely ownership of the thing." *Szewczyk v. Party Planners W., Inc.*, 18-0898, p. 8 (La. App. 4 Cir. 5/29/19), 274 So.3d 57, 62.

While plaintiffs argue that "Christiansen Aviation, as the owner of the aircraft, negligently and recklessly leased the aircraft, a potentially dangerous instrument when piloted by a negligent pilot under the influence of antidepressants and operated by [a] company without sufficient safety measure in place," plaintiffs cite no case law imposing liability to the lessor of a plane for the negligent operation of the plane by a lessee's employee. Thus, as a matter of law, the circumstances of this case do not provide a sufficient basis upon which liability can be assessed against Christiansen Aviation.

Moreover, in this case, the Aircraft Lease Agreement ("Lease") required that FANO, not Christiansen Aviation, ensure that the airplane was operated in a safe and proper manner. The Lease contained a clause whereby FANO agreed to:

> use and operate the Aircraft in accordance with the
> manufacture's operating instructions, in conformity with
> the laws, ordinances, rules and regulations, municipal,
> state, national or otherwise, now existing or hereafter
> enacted, controlling or in any way affecting the

14

> operation, use or possession of the Aircraft or the use of any airport premises by the Aircraft, and only in compliance with the terms, conditions and limitations set forth in the applications for or policies of insurance made or issued pursuant to the terms of this lease.[7]

We likewise find no merit to plaintiffs' contention that a "duty of extraordinary care" exists to those "who own, or control a dangerous instrumentality." Nor are we persuaded that the operation of an airplane can be compared to the handling of "inherently dangerous agencies, substances, or instrumentalities," as plaintiffs suggest. Plaintiffs cite several cases[8] for their contention that "explosives, electricity, firearms, combustibles and fireworks which might endanger persons or property are held to a high or extraordinary degree of care." In our view, airplanes are not in the same class of any of these inherently dangerous materials. We are similarly not convinced that the *Maryland Cas. Co. v. W. H. Stewart & Sons, Inc.*, 100 So.2d 912, 913 (La. App. 1 Cir 1958) case advances plaintiffs' arguments on this point. While the Court in *Maryland Cas.* noted that "[a]n airplane is not an inherently dangerous instrument, although in flight, when improperly used or in the hands of an incompetent pilot, it may be," *Id.*, 100 So.2d at 913, again, any negligence on Biondo's part in this case would not be imputable to Christiansen Aviation.[9]

Moreover, our review of cases from other jurisdictions reflects consistency in the principle that airplanes are not dangerous instrumentalities and that aviation is not an ultrahazardous activity. *See*, *e.g.*, *Garland v. Sybaris Clubs Int'l, Inc.*,

---

[7] Similarly, the Lease provided that FANO (and not Christiansen Aviation) would at all times, be the party in "operational control," of the airplane.

[8] *Waters v. Southern Farm Bureau Cas. Ins. Co.*, 212 So.2d 487 (La. App. 3 Cir. 1968); *Miller v. Lambert*, 380 So.2d 695 (La. App. 4 Cir. 1980) and *Cathey v. Bernard*, 467 So.2d 9 (La. App. 1 Cir. 1985)

[9] *See*, *e.g.*, *Lockwood v. Astronautics Flying Club, Inc.*, 437 F.2d 437 (5th Cir. 1971)(rejecting the theory of vicarious liability of the owner of an aircraft for the negligence of the pilot of the aircraft).

15

2019 IL App (1st) 180682, ¶ 31, 141 N.E.3d 730, 748 ("an airplane is not an inherently dangerous article, [although] it may become so if operated by a pilot who is incompetent, inexperienced, or reckless"); *Wilson v. Greg Williams Farm, Inc.*, 2014 Ark. App. 334, 5-6, 436 S.W.3d 485, 489 (2014)(quoting *Little v. McGraw*, 250 Ark. 766, 769, 467 S.W.2d 163 (1971)("[a]viation is now so commonplace that it cannot be considered to be either inherently dangerous or ultrahazardous"); *Joshi v. United States*, 2009 WL 2449234, at *5 (N.D. Ind. Aug. 6, 2009)("an aircraft does not qualify as a dangerous instrumentality"); *Lange v. Nelson-Ryan Flight Serv., Inc.*, 263 Minn. 152, 157, 116 N.W.2d 266, 270 (1962)("Technical progress in the art of flying has reached a point where an airplane cannot be regarded as a dangerous instrumentality per se"); *Wood v. United Air Lines, Inc.*, 32 Misc. 2d 955, 960, 223 N.Y.S.2d 692, 697 (Sup. Ct. 1961)("flying should no longer be deemed to be an ultrahazardous activity, requiring the imposition of absolute liability for any damage or injury caused in the course thereof. This view is [in] accord with the current trend of the law.").

In this matter, therefore, plaintiffs can only rely on theories of general negligence. As early as 1949, courts have recognized that, although there is "no statute specifically applicable to the issue of negligence in the operation of aircraft," "[i]n the absence of [such] statutes . . . , specifically applicable to the issue of negligence in the operation thereof, the rules of law applicable to torts— the ordinary rules of negligence and due care—obtain." *S. Air Transp. v. Gulf Airways*, 40 So.2d 787, 789 (La. 1949). *See also Nichols v. Jones*, 260 So.2d 748, 750 (La. App. 2 Cir. 1971)("[t]he rule in Louisiana is that in the absence of any statute specifically applicable to the issue of negligence in the operation of aircraft, the ordinary rules of negligence apply.").

16

Negligence claims have as their foundation, La. C.C. art. 2315 A, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." As this Court explained, "[t]he duty/risk analysis is the standard negligence analysis our Court employs in determining whether to impose liability under La. C.C. art. 2315." *Moore v. Choice Found.,* 18-0603, p. 5 (La. App. 4 Cir. 5/29/19), 274 So.3d 33, 37. Thus:

> in order for liability to attach under a duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

*Id*. (quoting *Mathieu v. Imperial Toy Corp*., 94-0952, pp. 4-5 (La. 11/30/94), 646 So.2d 318, 322). The absence of any of these elements "results in a determination of no liability." *Id*. (quoting *Mathieu*, p. 11, 646 So.2d at 326).

It is axiomatic that the "threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *FIE, LLC v. New Jax Condo Ass'n, Inc*., 16-0843, p. 23 (La. App. 4 Cir. 2/21/18), 241 So.3d 372, 391-92, *writ denied*, 18-449 (La. 5/25/18), 243 So.3d 544, and *writ denied*, 18-446 (La. 5/25/18), 243 So.3d 545. "The existence of a duty is a question of law." *Hohensee v. Turner*, 14-0796, p. 13 (La. App. 4 Cir. 4/22/15), 216 So.3d 883, 890. In considering this issue, "the inquiry is whether the plaintiff has any law—statutory, jurisprudential, or arising from general principles of fault—to support his claim." *Ducote v. Boleware*, 15-0764, p. 16 (La. App. 4 Cir. 2/17/16), 216 So.3d 934, 945, *writ*

17

*denied*, 16-0636 (La. 5/20/16), 191 So.3d 1071 (quoting *Faucheaux v. Terrebonne Consolidated Government*, 615 So.2d 289, 292 (La.1993)).

Plaintiffs cite no statute or case law requiring a lessor, even the lessor of an airplane, to undergo the measures plaintiffs assert Christiansen should have undertaken before a lease, and the obligations contained in that lease, become effective. Nor have plaintiffs cited any federal or state law imposing such duties. Their position is simply that Christiansen Aviation's conduct was not reasonable under the circumstances of this case. Because we can find no duty under state or federal law for the claims asserted by plaintiffs against Christiansen Aviation, we find that the plaintiffs have failed to meet the first element of a negligence claim against it.[10] We, thus, need not address any of the other elements of a negligence claim.

Furthermore, the Lease contained a provision whereby "[n]either party shall at any time during [the Lease] for any purpose whatsoever be or become the agent of the other, nor shall either party be responsible for the acts or omissions of the other or its agents." It also contained an indemnification provision whereby FANO agreed to:

> indemnify and save [Christiansen Aviation] harmless from and against any and all claims, costs, expenses, demand, and liabilities of any nature whatsoever which may be asserted against [Christiansen Aviation] or incurred by [Christiansen Aviation] and arising solely out of [FANO's] use or operation of the Aircraft during the term of this lease, whether caused by [FANO's] negligence, or not.

---

[10] Even assuming Christiansen Aviation owed a duty to the plaintiffs, any such duty would not encompass any of FANO's day-to-day operations, including the hiring or training of its pilots. Nor can we see any manner by which a breach of a duty could be a cause-in-fact or a legal cause of the accident insofar as it resulted from pilot error.

18

These provision clearly release Christiansen Aviation from liability for any negligence on FANO's part. "Where a lease's words are clear and unambiguous, a court must enforce its explicit terms." *Gravolet v. Fair Grounds Corp.*, 03-0392, p. 4 (La. App. 4 Cir. 7/14/04), 878 So.2d 900, 903. We find no ambiguity in the either of these provisions and thus, find further support for our finding that Christiansen Aviation has no liability in this action.

Turning to plaintiffs' negligent entrustment claims, Christiansen Aviation cites several cases involving the liability of a lessor of a vehicle for the negligence of its lessee. Plaintiffs distinguish these cases on the basis that they involve vehicles, rather than aircraft, and contend that the "[c]ircumstances and standards imposed upon a person lending his or her car to someone are extraordinarily different from those related to and/or imposed upon the owner of an aircraft leasing its property to an out-of-state operator," which, plaintiffs argue, require "heightened," "not lessened" standards. Plaintiffs, again, urge this Court to adopt a "reasonable person in like circumstances" to this claim.

There are no cases in Louisiana addressing a negligent entrustment claim asserted against the owner of an aircraft by the victim of its lessee's alleged negligence.[11] However, we see no discernable reason as to why the principles of negligent entrustment outlined in those cases would not apply to other types of leases, including the lease of an aircraft, particularly given that there are no other analogous Louisiana cases on this issue.

In the context of the lease of a vehicle, our jurisprudence indicates that, under a "negligent entrustment theory, the lender of a vehicle is not responsible for

---

[11] We note here, again, that Christiansen Aviation cannot be held liable for Mr. Biondo's alleged negligence because the negligence of a lessee "in the exclusive physical control of the object of the lease cannot be imputed to the lessor." *Cenance*, 03-1379, p. 4, 869 So.2d at 916.

the negligence of the borrower, unless he had or should have had knowledge that the borrower was physically or mentally incompetent to drive . . . [thus,] one who entrusts an automobile to an intoxicated, or otherwise incompetent, driver is responsible for the harm resulting from the incompetent operation of the vehicle.'" *Thistlethwaite v. Gonzalez*, 12-130, p. 27 (La. App. 5 Cir. 12/18/12), 106 So.3d 238, 257 (internal citations omitted). As the *Thistlethwaite* Court further noted, "[o]ne who loans a car to another when the lender knows or has reason to know that the borrower is likely to use the car in a manner involving an unreasonable risk of physical harm, because of the borrower's youth, inexperience, intoxication, incompetence, or otherwise, can be held liable to a third party for damage caused by the borrower." *Id*.

We need not rely solely on principles detailing negligent entrustment of vehicles, as the prevailing concept of negligent entrustment is that, in order "[t]o prove a claim of negligent entrustment, a plaintiff must show that a lessor had actual or constructive knowledge that the lessee was incompetent or had an apparent disability at the time of the lease. " *Cenance*, 03-1379, p. 6, 869 So.2d at 917.

In the instant matter, plaintiffs rely on their assertion that "Christiansen Aviation leased an aircraft to an out-of-state lessee for a period of three-and-a-half years and did so without learning anything about the lessee's operation, licensing, or qualification" as a basis for finding that it negligently entrusted its airplane to FANO. Plaintiffs do not, however, offer any facts establishing that Christiansen Aviation knew or should have known that FANO (or Biondo) was incompetent or otherwise incapable of fulfilling the Lease's covenant that FANO would "endeavor to use and operate the Aircraft in accordance with the manufacturer's operating

20

instructions" and "in conformity with the laws, ordinances, rules and regulations, municipal, state, national or otherwise."  Absent such a showing, plaintiffs cannot maintain a negligent entrustment claim.

**CONCLUSION**

Based on the foregoing and our *de novo* review of the record, we do not find any genuine issues of material facts in dispute in this matter.  The trial court, therefore, properly granted summary judgment in Christiansen Aviation's favor. The trial court's judgment is affirmed.


**AFFIRMED**